UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALAN STARR TROWBRIDGE,

        Petitioner,

v.

                                       Case No. 2:15-cv-186
                                       HON. GORDON J. QUIST

JEFFREY WOODS,

        Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner Alan Starr Trowbridge filed this petition for writ of habeas corpus challenging his jury conviction for three counts of first-degree criminal sexual conduct.[1] Petitioner was sentenced to three terms of life in prison without the possibility of parole. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner alleges that:

I. Petitioner was denied his federal constitutional right to the effective assistance of counsel when counsel erroneously told the Petitioner that the Michigan sentencing guidelines applied to his case when in fact the charge carried a mandatory penalty of non-paroleable life. Said error resulted in no plea offer being timely accepted, and Petitioner was denied his right to effective counsel as required in the *Lafler* decision and in violation of the VI and XIV Amendment of the Constitution of the United States.

---

[1] Petitioner was convicted by a jury of having sex with his 6 year old daughter. The horrendousness of his crimes makes sympathy for Petitioner impossible. Sympathy is not what guides this court in ruling on the pending petition.

The factual circumstances are mostly undisputed.  Petitioner was convicted on August 12, 2010, by a Grand Traverse County jury of three counts of first degree criminal sexual conduct.  At the final pretrial conference on July 30, 2010, Petitioner was offered a plea deal that would impose a maximum 22 ½ year term of imprisonment if he pleaded guilty to two counts of third degree criminal sexual conduct and as a habitual offender.  Petitioner rejected the offer.  On August 9, 2010, the government offered a deal for Petitioner to plead no contest to three counts of third degree criminal sexual conduct with a maximum sentence of 15 years imprisonment.  Petitioner accepted that deal, but the trial court judge refused to consider the plea because it violated his policy of accepting plea deals after the pretrial conference date and accepting a no contest plea.

It is undisputed that neither the prosecutor, the trial judge, nor defense counsel were aware that Petitioner was facing mandatory lifetime sentences without parole if he was convicted of first degree criminal sexual conduct.  In denying the motion after remand, the trial court stated: "[Defense counsel] just missed it and did not know about the statute that has a mandatory minimum for these circumstances.  In fairness . . . I don't think the People knew about it either.  And, I did not know about it until we stumbled on it a few days before sentencing."[2]  (ECF No. 10-12, PageID.1225).   Prior to trial, defense counsel informed Petitioner that he would likely lose at trial based upon the evidence against him, but that he would receive a sentence that allowed for parole.  Defense counsel informed Petitioner that it was likely that he would have to serve close to his maximum sentence before he was considered for parole.  It was not until after trial that Petitioner was informed of the penalties he faced for conviction of the crime charged.

---

[2] MCR 6.104(E)(1) provides that during arraignment the judge must inform the accused of the maximum possible prison sentence and any mandatory minimum sentence required by law.

Petitioner learned at sentencing that his conviction required mandatory life imprisonment without parole. The trial judge sentenced Petitioner to three terms of life imprisonment without parole. Petitioner appealed his conviction to the Michigan Court of Appeals. The Michigan Court of Appeals remanded for an evidentiary hearing on the issue of ineffective assistance of counsel. The trial court denied Petitioner's claim of ineffective assistance of counsel finding no prejudice. The trial judge explained:

> But, in any event, in this case it appears to me almost certain that the defendant would have made the same decision had he known about the mandatory life sentence. My reason for that conclusion is that the defendant was advised that the likely guidelines which deal with the minimum would be on the order of 285 months plus 25 percent for the habitual offender, which is pretty close to the 30 years that were the actual guidelines as we scored them, that's basically 30 years. So even without a departure the minimum sentence would have been on the order of 30 years. And, of course, Mr. Hartman did advise Mr. Trowbridge that for a substantial and compelling reason the judge could depart, and having a prior sex offense with a small child when you just have been convicted of another sex offense with a small child is a great big departure -- obvious departure possibility, and likelihood. But, in any event, even without a departure the minimum sentence would be on the order of 30 years.

> Under the rules of _People versus Tanner,_ the maximum sentence would have to be at least 45 years, and likely would have been set much higher because the two-thirds rule is not a binding rule it just says the minimum has to be no more than two-thirds of the maximum. If the minimum is 30 years then the maximum has to be at least 45, which means the defendant would be 74 years old when the maximum arrives under best circumstances. And, of course, Mr. Hartman did testify he advised all his CSC clients, and this defendant specifically, that usually the people in prison for CSC conducts are held to near their maximum. So best case scenario is he gets out around 74. And, if the judge chooses, as I undoubtedly would have, instead of 45 the minimum the smallest maximum sentence permitted by law, I could have and would likely have said 60 or 80 or something that would clearly be beyond his natural life so the parole board had that possibility. But, best case scenario is 74, and of course that could very well, as Mr. Hartman advised defendant, I could very well have departed above guidelines given the sex offense of the very similar type. He took the risk under bad

> advice he received, he took the risk of conviction that amounts to a
> life sentence. Had he known it was mandatory life I suggest to you
> with the dynamics of the decision there is very little difference. The
> decision would very likely have been the same, and is reasonably
> probable, therefore that decision would not have been different had
> he been properly advised. It is not reasonably probable that he would
> have accepted the plea at final conference.

(ECF No. 10-12, PageID.1336-1337).   The Michigan Court of Appeals concluded that although counsel failed to properly advise Petitioner that he was facing mandatory life without parole, Petitioner suffered no prejudice because he failed to show that he would have accepted the July 30, 2010, plea offer even if he had known that he would receive mandatory life without parole sentences if he lost at trial.  The Michigan Supreme Court denied leave to appeal in a standard order. [3]

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

---

[3] The Michigan Supreme Court heard oral argument on Petitioner's application for leave to appeal, but denied the application because "we are not persuaded that the question presented should be reviewed."  (ECF No. 10-16, PageID.1483).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata,* 449 U.S. 539, 546 (1981); *Smith v. Jago,* 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied,* 527 U.S. 1040 (1999).

The Michigan Court of Appeals summarized the facts of this case:

In 2010, defendant was arrested and charged with five counts of CSC I after his six-year-old daughter disclosed that defendant had inserted his penis into her vagina, mouth, and anus. [fn. two charges were dismissed at trial when the victim failed to testify about them]. Prior to this arrest, defendant had previously pleaded guilty to fourth-degree CSC for an incident involving a five-year-old boy. Because of this prior conviction, defendant faced a mandatory sentence of life without possibility of parole if convicted of CSC I. MCL 750.520b(2)(c), as amended by 2006 PA 165 and 2006 PA 169. The charging documents, however, did not mention the mandatory sentence of life without parole. Neither the parties nor the trial court were aware of the mandatory sentence provision until after the conclusion of defendant's trial.

Before trial, the prosecution made several plea offers to defendant. In May 2010, the prosecution offered to allow defendant to plead guilty to one count of CSC I. Defendant rejected that offer and, on July 30, 2010, at a final pretrial, the prosecution offered a plea agreement allowing defendant to plead guilty to two counts of third-degree CSC as a second offender. Defendant rejected this offer as well. On the first day of trial, August 9, 2010, the parties informed the court they had reached a plea agreement for defendant to plead no contest to three counts of third-degree CSC with no habitual offender enhancement. The trial court ruled it would not waive its policy of not entertaining a plea to a reduced charge after the final pretrial.

6

At the conclusion of defendant's trial, the jury found defendant guilty of all three charged counts of CSC I submitted to them. At sentencing, the trial court judge informed the parties that he had discovered that MCL 750.520b(2)(c) mandated that defendant be sentenced to life without parole for all three counts of first-degree CSC. Defendant moved to adjourn the sentencing to brief the effect of lack of notice to defendant of the mandatory sentence. At the next hearing, the trial court sentenced defendant to three terms of life without parole.

Following sentencing, defendant appealed to this Court and moved to remand to the trial court for an evidentiary hearing to make a record regarding his claim of ineffective assistance of counsel, which this Court granted. At the evidentiary hearing in the trial court, defendant's trial counsel testified that he was unaware that defendant was facing a mandatory sentence of life without parole until the original sentencing date and that he had advised defendant throughout the plea bargaining process about potential sentences using the sentencing guidelines. Trial counsel further testified that he told defendant that his chances of succeeding at trial were "three to five percent" and that, if he was convicted, defendant faced a minimum prison sentence of thirty years and a maximum sentence that could exceed natural life. Trial counsel also testified that he told defendant that sex offenders typically serve close to their maximum sentence and are rarely paroled early. Trial counsel also testified that in his opinion, if defendant were aware he would be sentenced to life without parole if convicted at trial, defendant would have accepted the final pretrial offer if counsel had recommended it. Defense counsel did not say whether he recommended that defendant accept the July 30 plea offer and acknowledged it was defendant's choice to proceed to trial. Defense counsel further testified he did not know whether defendant would have pleaded guilty rather than no contest under the plea offer made the first day of trial if the trial court had waived the plea cut-off date but would not accept a no-contest plea.

Michigan Court of Appeals decision (ECF No. 10-15, PageID.1354-1355) (footnotes omitted).

Petitioner claims that his federal constitutional right to effective assistance of counsel was denied by his counsel's failure to notify him of the mandatory penalty of life without parole. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a

claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

> To demonstrate that he received ineffective assistance of counsel, [petitioner] must show, under the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that counsel's assistance was deficient and that the deficiency prejudiced his defense. A failure to establish either deficient performance or resulting prejudice defeats the claim. *Id.* at 697, 104 S.Ct. 2052. To demonstrate deficient performance, a habeas applicant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. To demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052, and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

*United States v. Johnson,* 398 F. App'x 964, 967 (5th Cir. 2010).  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).  The failure of Petitioner's counsel to inform Petitioner that he was facing a mandatory life sentence was ineffective.  It is a basic precept of the Constitution that every defendant has the right to learn the charges against the defendant and the penalties the defendant is facing.  A defendant must be informed of any mandatory minimum sentences.  If a defendant pleads guilty to an offense without accurately being informed of the penalty the defendant is facing, counsel has been ineffective and the error is not harmless.  *United States v. Hogg*, 723 F.2d 730 (6th Cir. 2012).

Establishing prejudice requires more than a showing that the sentence Petitioner could have received under the plea bargain would have been more favorable than the sentence that he actually received.  In *McGowan v. Burt*, 788 F.3d 510 (6th Cir. 2015), the Sixth Circuit held that a district court incorrectly ruled in favor of habeas review for a petitioner that did not accept a plea due to claimed ineffective assistance of counsel.  *Id*. at 511.  The district court ruled that there was prejudice solely on the fact that the sentence the petitioner received was more unfavorable to the petitioner than it would have been if he had accepted the plea.  The Sixth Circuit

rejected that conclusion and held that the state court clearly identified a basis for concluding that counsel's performance fell within the wide range of permissible conduct and that the state court's determination that the inmate was not prejudiced was a reasonable determination. *Id.* at 517-519.

Under limited circumstances a presumption of prejudice may arise where counsel performance falls below an objective standard. Those circumstance are limited to when: "(1) there exists a 'complete denial of counsel' or a denial of counsel 'at a critical stage' of the defendant's trial; (2) defense counsel fails to 'subject the prosecution's case to a meaningful adversarial testing'; or (3) counsel 'is called upon to render assistance where competent counsel very likely could not.'" *Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003) (quoting *United States v. Cronic*, 466 U.S. 648, 658-659 (1984)). The presumption of prejudice also arises "where the defendant demonstrates that his attorney actively represented conflicted interests." *Id.* Some constitutional errors are considered structural "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. 'Without these basis protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991) (citing *Rose v. Clark*, 478 U.S. 570, 577-578 (1986)). Whether fundamental error is entitled to a presumption of prejudice is not clear.

> For example, no showing of prejudice is necessary "if the accused is denied counsel at a critical stage of his trial," *United States v. Cronic*, 466 U.S. 648, 659 (1984), or left "entirely without the assistance of counsel on appeal," *Penson* v. *Ohio*, 488 U. S. 75, 88 (1988). Similarly, prejudice is presumed "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S., at 659. And, most relevant here, prejudice is presumed "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken." *Flores-Ortega*, 528 U.S., at 484.

10

*Garza v. Idaho,* 586 U.S. ___, No. 17-1026, slip op. at 3-4 (2019) (presumption of prejudice applies where counsel fails to file an appeal requested by a defendant even where the plea agreement contained an appeal waiver).

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that the *Strickland* standard applies to claims alleging that counsel was ineffective in advising a defendant about a plea offer. *See Rodriguez-Penton v. United States,* 905 F.3d 481, 489 (6th Cir. 2018) ("when the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process."). As in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different. *See Lafler*, 566 U.S. at 163-167. In such circumstances, a petitioner must establish a reasonable probability that he would have accepted the plea offer absent ineffective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 147 (2012). The *Lafler* Court thoroughly rejected the argument that a subsequent fair trial renders counsel's earlier ineffective assistance irrelevant. *Lafler*, 566 U.S. at 168-169. "Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id*. at 166. Rather, a petitioner must establish that "the outcome of the plea process would have been different with competent advice." *Id*. at 163.

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to

11

accept it." *Missouri v. Frye*, 566 U.S. at 147.  The Supreme Court explained that a petitioner must establish four factors to show ineffective assistance of counsel for failing to properly give advice that led to a rejected plea offer:

> In these circumstances a defendant must show that [1] but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., [2] that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [3] that the court would have accepted its terms, and [4] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164.

The petitioner in *Lafler* challenged his counsel's performance in advising him to reject a plea offer and proceed to trial.  The petitioner was charged with assault with intent to murder, felon in possession of a firearm, possession of a firearm in commission of a felony, possession of marijuana, and for being a habitual offender.  Twice, petitioner rejected plea deals that would limit his sentence to 51 to 85 months in exchange for pleading guilty to two charges. The petitioner initially informed the court that he was guilty and would accept the plea bargain, but later rejected each offer based upon the advice of his counsel.  The petitioner, again, rejected a less favorable deal on the first day of trial. Petitioner proceeded to trial, was convicted on each count, and received a mandatory minimum sentence of 185 to 360 months imprisonment.  On Appeal, the Michigan Court of Appeals rejected the petitioner's ineffective assistance of counsel claim on the basis that he had knowingly and intelligently rejected the plea offers and elected to go to trial.  Because the Michigan appellate courts applied the wrong standard and failed to apply *Strickland* standards to petitioner's ineffective assistance of counsel claims, the AEDPA did not bar the requested relief.

12

The Supreme Court remanded *Lafler* with instructions requiring the prosecutor to reoffer the plea proposal to allow the judge to exercise discretion whether to vacate the conviction and to accept the plea or to leave the conviction undisturbed.  The Supreme Court explained that where the charges that a defendant would have admitted to are the same charges that the jury based the defendant's conviction upon, a resentencing based upon the original plea deal is all that is required to correct the ineffective assistance of counsel that caused the plea rejection. However, where the plea offer was based upon guilty pleas to less serious charges than the convicted charges, reoffering the plea deal and allowing the court to exercise discretion is the appropriate remedy. Therefore, in a case where more serious charges or mandatory sentences limit a judge's discretion in sentencing, the original plea offer must be remade and reconsidered by the trial court.[4]

The court should be mindful that the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires a 'state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was error . . . beyond possibility for fairminded disagreement.'"  *Burt v. Titlow*, 571 U.S. at 19-20; (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In *Burt v. Titlow,* the Supreme Court found error in the Sixth Circuit's conclusion that the plea withdrawal was due to the fact the sentence recommendation exceeded the Michigan state guideline range for second degree murder.  The Sixth Circuit had reversed the Michigan Court of Appeals conclusion that counsel provided effective assistance in advising petitioner, who claimed innocence, to reject a plea agreement as a negotiation tactic to gain a more favorable plea deal.  *Id.* at 17, 20.  The Michigan Court of Appeals found counsel's "advice satisfied *Strickland* [and] fell

---

[4] The trial judge suggested that the appropriate remedy in this case would be to sentence Petitioner as convicted but without the application of mandatory life without parole.  The judge explained that Petitioner would receive exactly what he had expected when he rejected the plea offer and chose to proceed to trial.

within the bounds of reasonableness under AEDPA, given that respondent was claiming innocence and only days away from offering self-incriminating testimony in open court pursuant to a plea agreement involving an above-average guidelines sentence." *Id*. at 22. The Supreme Court concluded that the Michigan Court of Appeals had reasonably determined that counsel provided adequate advice leading to the withdrawal of the guilty plea and that finding could not be overturned under the AEDPA.

In this case, the Michigan Court of Appeals agreed with the trial court that Petitioner did not establish prejudice necessary to support his ineffective assistance of counsel claim. "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. The Michigan Court of Appeals explained:

> In this case, the parties concede that the first prong of the test for ineffective assistance of counsel, that counsel's performance was deficient, has been met. In a situation where a defendant is convicted after trial and receives a longer sentence than he or she would have received if a pretrial plea bargain offer had been accepted, a defendant can establish the second prong of the *Strickland* test, prejudice, by showing a reasonable probability that if given proper advise during the plea bargaining process he or she would have accepted the prosecution's plea offer. See *McCauley*, 287 Mich App at 162-164. This is the prejudice standard employed by the trial court in this case, and a critical component of the prejudice standard the Supreme Court subsequently adopted for claims of ineffective assistance during the plea bargaining process in *Lafler*. The Court held that to show *Strickland* prejudice "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S Ct at 1384.

14

The *Lafler* Court expounded that in situations like the present case, the prejudice alleged from ineffective assistance of counsel is having to stand trial and

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.*, 132 S Ct at 1385.]

Thus, the *Lafler* Court's expanded test for *Strickland* prejudice in the case of a rejected plea offer requires a defendant to show that it is reasonably probable that (1) defendant would have accepted the plea offer, (2) the prosecution would not have withdrawn the plea offer in light of intervening circumstances, (3) the trial court would have accepted defendant's plea under the terms of the bargain, and (4) defendant's conviction or sentence under the terms of the plea would have been less severe than in fact were imposed. Here, the trial court found after an evidentiary that defendant had not established a reasonable probability that with proper advice he would have accepted the prosecution's final pretrial plea offer. This is a factual finding that we review for clear error. *McCauley*, 287 Mich App at 164.

Generally, a trial court's factual findings following a *Ginther* hearing are entitled to deference. *People v Grant*, 470 Mich 477, 485 n 5; 684 NW2d 686 (2004). This is so because the trial court had the opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C); *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859, amended 481 Mich 1201 (2008). Moreover, in this situation, the trial court had the opportunity to observe the key participants in the plea bargaining process—the prosecutor, defense counsel, and defendant— throughout the pretrial, trial, and post-trial proceedings. A finding is clearly erroneous when, although there is evidence to support it, this Court, on the whole record, is left with a definite and firm conviction that a mistake was made. *Dendel*, 481 Mich at 130.

Based on the whole record, we are not left with the definite and firm conviction that the trial court made a mistake when it concluded that

15

defendant had not established a reasonable probability that he would have accepted the prosecution's final pretrial plea offer with proper advice regarding the mandatory sentence he faced if convicted at trial. Rather, the record, together with the evidence and lack of evidence presented at the *Ginther* hearing, supports the trial court's finding. First, defense counsel's testimony established that defendant knew his chances of success at trial were extremely small. Second, although defense counsel erroneously used the sentence guidelines to advise defendant regarding the potential sentence he faced, defendant was told that if convicted he likely would be sentenced to such a lengthy term of years that it would be tantamount to a life sentence. Given this advice, defendant still chose to reject a plea bargain that would have capped his maximum prison term at 22 ½ years. Third, defendant failed to present his own testimony, or even an affidavit in which he stated that with proper advice on the mandatory sentence he faced he would have accepted the prosecution's final pretrial plea offer. Although defense counsel testified he believed defendant would have accepted the final plea offer with proper advice and if counsel had recommended it, the trial court clearly accorded little weight to defense counsel's after-the-fact speculation. Finally, the trial court based its finding that it was unlikely that defendant would have accepted the prosecution's final pretrial plea offer even with proper advice regarding the mandatory sentence he faced if convicted at trial on the subsidiary finding that defendant likely would have been unwilling or unable to provide a factual basis for a guilty plea required by MCR 6.302(D)(1).

This last subsidiary finding is supported by the record and deserves further discussion. MCR 6.302(D)(1) provides: "If the defendant pleads guilty, the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of an offense charged or the offense to which the defendant is pleading." Here, defendant maintained his innocence throughout the proceedings; he testified at trial that he did not commit the charged offenses and maintained his innocence in posttrial proceedings. Defendant even failed to submit an affidavit expressing his willingness to plead guilty to two counts of third-degree CSC as offered at the final pretrial. Although the final pretrial memorandum states the prosecution's offer was 'plead to 2 cts of csc & habitual 2nd,' there is no evidence this offer was anything other than a reduced-charge guilty plea offer. Further, whether to accept a no contest plea is discretionary with the trial court. MCR 6.301(B). The trial court made it plain while ruling on defendant's motion that the facts of this case did not fit within the narrow circumstances in which the court would accept a no contest plea: loss of memory caused by intoxication or injury. But a no contest plea is the only plea bargain

16

offer the record indicates defendant was willing to accept, on the first day of trial. Even defendant's trial counsel did not know whether defendant would have pleaded guilty rather than no contest under the plea offer made the first day of trial if the trial court had waived the deadline for plea bargains.

In sum, the record supports the trial court's factual finding that it is not reasonably likely that defendant would have accepted the prosecution's final pretrial plea offer even if he had been properly advised of the statutory mandatory life sentence if convicted at trial. We cannot say that the trial court's finding is clearly erroneous. *LeBlanc*, 465 Mich at 579; MCR 2.613(C). Consequently, defendant has failed to establish the prejudice prong of his ineffective assistance of counsel claim.

Michigan Court of Appeals decision at 6-7 (PageID.1357-1360).

The Michigan Court of Appeals determined that counsel's performance fell below an objective standard of reasonableness during the plea process when he failed to properly inform Petitioner that he faced mandatory life imprisonment without parole if he was convicted at trial. Nevertheless, the Michigan Court of Appeals found that Petitioner failed to show prejudice, because Petitioner failed to show that he would have accepted one of the earlier plea deals even if he was informed about the mandatory lifetime sentence without the possibility of parole. The Michigan Court of Appeals stated that Petitioner could not establish prejudice due to the fact that he continued to maintain his innocence and would not have likely accepted the plea deal:

Because three of the four elements to establish prejudice require an after-the-fact determination of what the principals engaged in the plea-bargaining process would likely have done under different circumstances, and because of the trial court's own participation and ability to observe the other participants, the trial court *is* in the best position to make these determinations. Consequently, we believe this Court has correctly determined that the trial court's findings of what the various plea bargaining actors would have done in different scenarios is a factual determination reviewed for clear error. See *McCauley*, 287 Mich App at 164. Moreover, even if we reviewed the trial court's finding de novo, we would hold that the objective circumstances support the trial court's determination that defendant did not establish prejudice because he did not establish a reasonable

likelihood that he would have accepted the prosecution's plea offer even with proper advice.

Michigan Court of Appeals decision at Footnote 6 (PageID.1358-1359).

This case differs from *Lafler* in that Petitioner did not have a basic understanding of the penalties he was facing because of ineffective assistance of counsel.[5] Without this knowledge, Petitioner could not evaluate any plea offer or make an informed decision on an offer. This is a fundamental defect that prejudiced Petitioner. Petitioner did accept a plea offer the day of trial without knowing the actual penalty he was facing. This is clear evidence that he would have reached a plea deal much earlier had he known the penalty he was facing.

Deference to state court conclusions mandates that the federal court do more than "simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432. "For the present purposes, it is enough to reiterate 'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Petitioner prepared an affidavit in response to the Michigan Court of Appeals decision which states that with effective counsel he would have entered into a plea bargain that the trial judge would have accepted. However, the Michigan Court of Appeals found that the weight of the evidence in the record shows that Petitioner, even with knowledge of the mandatory life sentence without parole, would likely still have rejected the plea bargain offers and maintained his innocence. This was pure speculation and ignores the fundamental unfairness of what occurred.

---

[5] The trial court erred in failing to inform the Petitioner of the mandatory life sentence. This should have occurred at a very early stage of the proceedings. The right to notice of accusation may not be infringed by a state court because it is so fundamental to procedural due process. *In re Oliver*, 333 U.S. 257, 273 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Rabe v. Washington*, 405 U.S. 313 (1972).

Petitioner argues that the Michigan Court of Appeals' decision violates clearly established law as stated in the *Lafler* decision. Petitioner asserts that the Michigan Court of Appeals' decision is unreasonable due to the conclusions that Petitioner chose to proceed to trial despite knowing that he was unlikely to succeed. Petitioner argues that without knowing that he was facing a mandatory sentence of life without parole he could not have properly evaluated the plea offers at the time that they were made to him.

At the evidentiary hearing in the trial court, counsel for Petitioner testified that the first offer was for Petitioner to plead to one count of CSC I. Petitioner turned down that offer. Although it was unknown to everyone involved, that offer still exposed Petitioner to mandatory life without parole. (ECF No. 10-11). Counsel indicated that he believed that the case was very close to resolution by plea agreement because he was negotiating back and forth with the prosecutor. (PageID.1253). Those negotiations would have been fundamentally different had Petitioner and his counsel known the penalty he was facing. Counsel had informed Petitioner that his minimum sentence prior to any habitual offender enhancement would fall somewhere between 11 to 24 years and that his maximum sentence could exceed life imprisonment. (PageID.1266, 1277, 1278-1279, 1296). Counsel explained that Petitioner was aware that he would likely be found guilty at trial and that his is chance of acquittal was slim.

> [Prosecutor] So during -- during all the time that you spent with the Defendant, he never told you he wanted to plead guilty?
>
> [Defense counsel] Those exact words were not used. Alan was amendable to a plea. And I'll tell you why I say this. We knew that a jury would not acquit a registered sex offender, unless our proofs went in perfectly. I believe our prospects at trial, as I told him, were an extreme long shot. We were talking three to five percent. I mean, it was -- it was mission impossible.
>
> [Prosecutor] And he understood that?

19

[Defense counsel] He understood his prospects at trial were difficult.

(PageID.1281-1282).

This court's role is to decide whether the Michigan Court of Appeals' determination that Petitioner failed to establish prejudice was a reasonable decision under the AEDPA and whether Petitioner presented enough evidence to rebut "the state court's factual finding 'by clear and convincing evidence.'" *Burt v. Titlow*, 571 U.S. at 18. As recognized, this is a difficult standard to meet. Petitioner argues that he should have the opportunity to accept the government's July 30, 2010, 22 ½ year maximum term of imprisonment plea offer with full knowledge of the maximum penalty that he faced at the time he was charged with the crimes. An appropriate remedy is to "restore the status quo that existed before counsel's deficient performance" caused Petitioner to reject the July 30, 2010, plea offer. See *Garzia*, 586 U.S. at slip op 13-14.

In the opinion of the undersigned, Petitioner has shown that the Michigan Court of Appeals' decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In summary, the undersigned concludes that Petitioner's ineffective assistance of counsel claim is established and therefore recommends that this Court grant the petition. In addition, it is recommended that the Court order that Petitioner be given the opportunity to accept the July 30, 2010, plea offer.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.
*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140
(1985).

                                       /s/ Timothy P. Greeley
                                      TIMOTHY P. GREELEY
                                      UNITED STATES MAGISTRATE JUDGE

Dated:   February 28, 2019